# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JOSEPH SALLAJ,  )
        Plaintiff,  )
          )
v.  )      Case No. 3:25-cv-00607
          )      Judge Trauger/Frensley
          )
MIDDLE TENNESSE STATE  )
UNIVERSITY, et al.,  )
        Defendants.  )

## REPORT AND RECOMMENDATION

This pro se discrimination matter is before the court on defendants' motion to dismiss the amended complaint. Docket. No. 26. Also before the court is Plaintiff's motion for a preliminary injunction. Docket No. 6. The motions are briefed and ready for disposition. The undersigned recommends defendants' motion be granted and the complaint be dismissed for lack of standing. Plaintif's motion for a preliminary injunction should be denied as moot.

### I. BACKGROUND

Plaintiff Joseph Sallaj is a graduate student at Middle Tennessee State University (University), a public university. Proceeding pro se and in forma pauperis, he alleges the following in his amended complaint. Docket No. 13. He enrolled in the online Criminal Justice Administration (CJA) master's program at the University in Spring 2024 and registered with its Disability & Access Center (DAC). Id., at p. 2. His disabilities are traumatic brain injury, seizures, mild cognitive impairments, developmental delays, dyslexia, mild speech impairment, visual and auditory impairments, PTSD, ADHD, and others. Id. at p. 3. The DAC granted him reasonable accommodation, which included extended time on tests, assistive technology, alternative formats for assignments, leniency on grammar and spelling errors, and clear instructions. Id. As soon as he began classes that spring, he experienced a pattern of discriminatory behavior. Id. Dr. Carter

Smith discriminated against him by issuing him a grade of 50/100 on a paper, "accompanied by over ten critical comments on minor grammar and spelling" errors on the assignment. Id. Smith's conduct was "arbitrary" and "infringed upon his disability rights." Id. at p. 3

He filed a formal complaint disputing the grade and feedback he received from Smith. Id. An investigation was conducted that also involved another professor, Dr. Harms. Id. In April 2024, shortly after the investigation, Harms retaliated against him by removing a course offering for the summer 2024 semester in order to impede his academic progress. Id. He was forced to enroll in another course. Id. He took another course that summer taught by Dr. Harms. Id. In the replacement course, Harms "refused to provide clear instructions and employed excessive criticism on grammar and spelling in direct contravention of his disability accommodations." Id. at p. 4. . He filed a formal complaint against Harms after Harms falsely accused him of plagiarism. Id. He was cleared of the accusation of plagiarism. Id. During the investigation, Harms made inappropriate and discriminatory remarks, including referring to him as "odd" because he spoke in the third person and stated it was "odd" for a person to receive a disability accommodation. Id. at p. 3. He also asked Plaintiff for personal information such as addresses and next of kin that Harms stated were to verify his identity. Id. During summer 2024, he experienced additional discriminatory practices, including refusal to provide clear instructions, grammar and spelling critiques, and subjective grading practices. Id. at p. 4.

He was granted thesis enrollment approval for the summer and fall 2024 semesters despite having just started coursework. Id. On September 5, 2024, he submitted a thesis research application to the University's Institutional Review Board (IRB) on the topic of stress reduction among domestic-violence survivors, research which involved human subjects. Id. at p. 6. The research met the criteria for "exempt" or "expedited review" under 45 C.F.R. § 46.101(b)(5) but

2

was subjected to an unwarranted full review by the IRB. Id. Members of the IRB engaged in misconduct by arbitrarily classifying the human subjects of his research as a "vulnerable population," using a foreign rather than US standard and asserting Plaintiff's writing was not comprehensible. Id. The IRB "excessively delayed the review process, excluded [him] from IRB meetings, and rejected his appeals." Id. The IRB ultimately denied his research proposal. Id. at pp. 5-6. He raised his concern about the denial of his research proposal to Dr. Grandjean, Dean of CJA, who failed to investigate and shifted blame to him, advising him that "there is no universally recognized right to conduct research" and dismissing his First Amendment rights. Id. at p. 7.

He offered a second thesis on the topic of Opioid Use Disorder which was approved and completed. Id. at pp. 5, 7. The University denied publication of the thesis despite meeting all regulatory criteria. Id. at p. 7. By email, David Butler, Vice Provost for Research & Dean of the College of Graduate Studies, withheld final approval for publication, effectively censoring his research on the basis that publishing the thesis before completing all required courses would be "improper, irregular, and irresponsible." Id. at p. 6. The email stated in part:

Once you have completed all remaining courses successfully, I will be notified by the department, and I will sign the thesis form, moving your progress forward and bringing your course of study back into alignment. There is no time limit for me to sign the thesis form. It stays in my box until acted upon.

It would be improper, irregular, and irresponsible for the university to give a false impression that someone has fully earned a master's degree by finalizing and publishing a thesis before all required courses are successfully completed.

I await notification from the department of your successfully completing all remaining classes in your program.

Docket No. 6, at pp. 50-51. [1]

---

[1] Plaintiff attached emails as exhibits to his motion for preliminary injunction. Docket No. 6, at pp. 50-51, 54-55. The Court can consider the mails without converting the motion to one for summary judgment. *FedEx Ground Package Sys. v. Route Consultant, Inc.*, 661 F. Supp. 3d 765, 773 (M.D. Tenn. 2023) (citations omitted).

3

In Spring 2025, Lee Wade, Assistant Dean of CJA, threatened him by requiring him to complete a new thesis within 30 days after his first thesis was denied or receive a failing grade. Docket No. 13, pp. 4-5. He produced another thesis within two weeks which was approved by committee members and which he subsequently defended. Id. at p. 5.

Plaintiff filed a complaint with the University for the refusal to publish his thesis. Id. Butler cited "standard practices" to justify withholding publication. Id. He filed a complaint with Brian P. Hinote, Provost, who deferred to Butler's position. Id. He then filed a formal appeal to Hinote for the grade he received on his thesis, and the appeal was denied. Id.

Plaintiff quotes the email from Hinote:

I've reviewed your request below (and your attachments), but you cannot appeal this grade as you describe. As I understand the situation, your requested "P" grade is not a valid grade for the CJA 6640 course, since the grade mode for the course is S/U (i.e., those are the only two valid grades for the course). This is documented in the MTSU Graduate Catalog.

As a result, the university cannot grant the requested steps below. Your transcript will also not show that your degree is complete until you fulfill all degree requirements. My recollection is that you lacked two courses in your degree, but your program advisor can clarify.

If you have additional questions about a graduate degree, then I refer you to the College of Graduate Studies for the most accurate and up-to-date information.

Docket No. 6, pp. 54-55.

In his amended complaint Plaintiff names as defendants the University, Butler, and Sidney McPhee, University president. He names Butler and McPhee in their official capacities.[2] Docket No. 13. Plaintiff asserts four claims. In Count I he asserts the University repeatedly denied him his documented accommodation including extended time on tests and alternative academic adjustments in violation of the ADA and section 504 of the Rehabilitation Act. Id. at p. 8. He

---

[2] Plaintiff does not cite 42 U.S.C. § 1983 as the basis for any of his claims.

4

alleges his complaints were summarily dismissed and met with retaliatory grading and conduct. Id. In Count II he asserts Butler and the University infringed on his ability to conduct research, complete and publish his academic work without censorship and retaliation, withheld approval for this thesis and dictated publication platforms violated his First Amendment rights under the federal and Tennessee constitution. Id. In Count III, he alleges Butler and the University deprived him of Fourteenth Amendment due process during the investigation of his complaints with the University by relying on "standard practices" and failing to follow school policies, state and federal laws, rules, and regulations. Id. at p. 9. He asserts they relied on nonexistent regulations and denied him the right to a fair hearing, to file complaints, attend meetings, and receive notices of decisions affecting academics. Id. In Count IV, he asserts the University and Butler's made false representations that harmed his academic and professional reputation. Id. He cites instances of purported false statements. He alleges defendants falsely claimed his thesis required full review because he proposed working with a vulnerable population. Id. He alleges Smith, who is not a party, falsely labeled him as "unqualified." Id. He asserts that Harms, who is not a party, falsely accused him of plagiarism. Id. at p. 9. Plaintiff finally alleges that his transcript inaccurately reflects that no final thesis defense occurred. Id. Id. For relief, he seeks declaratory and injunctive relief and $900,000.00 in damages. Id. at p. 10.

Defendants' motion to dismiss followed. Docket No. 26. They argue Plaintiff lacks standing to bring his claims because he has suffered no injury-- constitutional or otherwise--and any complained of harm is self-inflicted and not traceable to defendants. Docket No. 27, at p. 8. Defendants assert Plaintiff simply disagrees with academic decisions made by defendants and asks the Court to intervene on his behalf. Id They argue his claims for monetary and injunctive relief against the University, McPhee, and Butler are barred by Eleventh Amendment immunity. They

5

note Plaintiff makes no allegations of any conduct on the part of McPhee and that Plaintiff seeks to compel Butler to publish a thesis before Plaintiff has completed required coursework. Id, at p. 9. Finally, they assert Plaintiff fails to state plausible claims for relief for any of his claims. Id. at pp. 17-22.

## II. DISCUSSION

### A. Standing

Defendants assert Plaintiff lacks standing to being his claims. The undersigned agrees. Standing under Article III of the Constitution requires that a would-be litigant make a showing of three elements: (i) an "injury in fact," which is an invasion of a legally protected interest that is concrete, particularized and either actual or imminent; (ii) the existence of a causal connection between the alleged injury and the conduct being challenged; and (iii) redressability, i.e., that the injury is likely to be remedied by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"Standing is, of course, a threshold issue in every case before a federal court: If a plaintiff lacks standing, he or she cannot invoke its jurisdiction." *Arkansas Right to Life State Political Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998), *cert. denied*, 119 S.Ct. 1041 (1999). Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In cases of complaints for injunctive relief, the "injury in fact" element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05 (1983). "[I]t is the plaintiff's burden to establish standing

6

by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] "certainly impending ." ' " *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc*., 528 U.S. 167, 190 (2000) (cleaned up) (environmental compliance suit).

*Injury in Fact*

Defendants contend Plaintiff does not allege any concrete injuries, nor does he identify any specific future educational harm likely to occur. Docket No. 27, at p. 10. They argue that there is no injury under the ADA or Sec. 504 because Plaintiff's alleged harms – receiving a poor grade on a midterm paper, being required to enroll in different courses within the CJA program, receiving critiques on writing assignments, and being warned about plagiarism – are not cognizable injuries that occurred because of his disability, but are instead routine academic judgments squarely within the discretion of faculty and administrators. Id. *See Parate v. Isibor*, 868 F.2d 821, 828 (6th Cir. 1989) (a "professor should retain wide discretion in his evaluation of the academic performance of [his] students . . . [and] should remain free to decide, according to his own professional judgment, what grades to assign and what grades not to assign."

Plaintiff opposes the motion, asserting the systematic failure to provide accommodation is not a mere academic judgment and reasserting the allegations in his complaint. Docket No. 28. He argues that being penalized for grammatical errors despite an accommodation, forced into adverse testing conditions without accommodation, being subjected to discriminatory remarks, and refusal to provide clear instructions causes tangible harm to his academic standing and exacerbates his disabilities. Id. Docket No. 28, at p. 11.

Although an educational institution may be required to make reasonable accommodations, it is not required "to lower or to effect substantial modifications of standards to accommodate a

handicapped person." *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 413, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Nor is a school required to make fundamental or substantial modifications to its programs to accommodate the disabled. *Kaltenberger*, 162 F.3d at 436 (citing *Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)). Moreover, when evaluating the reasonable accommodation requirement, "[c]ourts must give deference to professional academic judgments." Id. "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." Id. ( quoting *Regents of Univ. Of Mich. v. Ewing*, 474 U.S. 214, 225 n. 11, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985)). Therefore, academic decisions made by faculty in their professional judgment must be given great respect. Id. See also *Oser v. Cap. Univ. L. Sch.,* No. 2:09- CV-709, 2009 WL 2913919, at *5 (S.D. Ohio Sept. 8, 2009) (university is entitled to exercise professional judgment in implementing approved accommodations, and they are not required to fundamentally or substantially alter established academic standards to do so.)

Plaintiff makes conclusory allegations that criticisms and grading for his paper and other academic work were based on discrimination. He offers only conclusory grievances which amount to dissatisfaction with being treated as a graduate-level student in a master's degree program. Rather than accepting the academic judgment and input of his professors, Plaintiff filed over ten formal complaints and several grade appeals. Docket No. 13, at p. 5. This case amounts to a situation where Plaintiff's complaints were reviewed and heard and he simply disagrees with the outcome. His disagreements with his professors' judgment and dissatisfaction with grades they have awarded him are not cognizable injuries.

Nor has Plaintiff demonstrated any First Amendment injury. Plaintiff asserts that his academic reputation and future professional prospects have been harmed by the IRB's rejection of

his first research proposal, as well as their failure to publish his completed thesis on a second topic. Docket No. 13, pp. 8-9. He asserts that the IRB's rejection of his research proposal impeded his academic progress and their failure to publish his thesis inhibits his ability to contribute to the public good, thereby restricting the ability of others to access his research. Id. at p. 7. He asserts this demonstrates "viewpoint discrimination." Id. at pp. 8-9.

Notably, Plaintiff identifies no concrete future professional prospects that have been impeded, nor does he articulate how adhering to university practice and publishing his thesis following the completion of his coursework could plausibly harm his reputation. Neither the denial of a research proposal nor the refusal to publish a thesis before program requirements are satisfied discriminate against Plaintiff's viewpoint; they are routine, reasonable regulations of university sponsored academic activity and academic requirements applicable to all graduate students. *See e.g., Brown v. Li*, 308 F.3d 939, 952 (9th Cir. 2002) (under the First Amendment, a thesis proposal may be "subject to a reviewing committee's reasonable regulation."). Plaintiff's alleged harms stemming from his decision to complete his academic requirements in a nonsequential order do not constitute a cognizable First Amendment injury.

The undersigned further concludes there is no due process injury. The deprivation of process alone – without any concrete harm flowing from it – cannot establish an injury sufficient to confer standing. *Mikel v. Quin*, 58 F.4th 252, 258 (6th Cir. 2023) ("a bare procedural violation, divorced from any concrete harm," is not a present or imminent injury that an injunction can redress.), quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). And "the right to a graduate school education is not deeply rooted in this nation's history and traditions." *Stephenson v. Cent. Michigan Univ.*, 897 F. Supp. 2d 556, 568 (E.D. Mich. 2012). The relevant question "is not whether the University conformed to its own internal grievance

procedures, but [whether the plaintiff] was afforded the due process guaranteed under the Fourteenth Amendment." *JiQiang Xu v. Michigan State Univ.*, 195 F. App'x 452, 457 (6th Cir. 2006) (the fact that doctoral student found university's solutions unsatisfactory following an investigation does not alone give rise to a due process concern.).

To the extent Plaintiff asserts the University did not strictly adhere to its own internal procedures when reviewing his formal complaints and appeals (Docket No. 13, p. 5) he nonetheless received all the process the Constitution requires, an opportunity to be heard. *See Yoder v. Univ. of Louisville*, 526 F. App'x 537, 549 (6th Cir. 2013). The Sixth Circuit has held that due process does not always require a "full evidentiary hearing" and that the formality and exact procedures required can vary depending on the nature of the interests asserted. *Purisch v. Tennessee Technological Univ.*, 76 F.3d 1414, 1423-24 (internal citations omitted). Rather, the root of due process requires " 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.' " Id. at 1423 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). Plaintiff here cannot claim that he was denied such an opportunity. Plaintiff identifies no injury arising from any alleged procedural deficiency; he merely complains that each complaint was reviewed, investigated, and resolved in a manner with which he disagrees.

*Causation*

To have standing, Plaintiff must show that his alleged injuries are "fairly traceable to the defendant's allegedly unlawful conduct." *Lujan*, 504 U.S. at 560. However, "if the plaintiff caused his own injury, he cannot draw a connection between that injury and the defendant's challenged conduct." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020). Self-inflicted

10

injuries break the chain of causation and are therefore not injuries in fact. *Id.*

Defendants argue Plaintiff's alleged harms are not fairly traceable to them. They argue his alleged harm is a result of his own doing because he chose to pursue his thesis out of sequence, i.e., before completing the required coursework. The undersigned agrees. When his initial research proposal was denied, Plaintiff chose another research topic for his thesis and completed and defended it. Docket No. 13, p. 7. This thesis will presumably be eligible for publication upon completion of his remaining curriculum. Whether Plaintiff completes his degree presumably is dependent on whether he satisfactorily completes the required work. And presumably no action on the University's part, has or will, prevent Plaintiff from completing his degree coursework.

*Redressability*

Plaintiff seeks an order requiring publication of his thesis and invalidating the university's policies barring publication before degree requirements have been met. Docket No. 13, p. 10. For an injury to be redressable, Plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation omitted). As stated earlier, Plaintiff's alleged harms concern purely academic matters requiring the exercise of academic judgment not appropriate for this court's review. *See Megenity v. Stenger*, 27 F.3d 1120, 1125 (6th Cir. 1994) (judicial review of academic decisions is "rarely appropriate."); *Stephenson*, 897 F. Supp. 2d at 569-70 ("Federal courts are not well-suited to evaluate the substance of academic decisions made by faculty members."); *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 226 (1985) (citation omitted) (academic decisions often require "an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decision-making."); *Parate v. Isibor*, 868 F.2d 821, 827 (6th Cir. 1989) (non-tenured professor's § 1983 suit against university; "[t]he administration of the university rests

11

not with the courts, but with the administrators of the institution.").

Further, this court cannot provide relief by invalidating these academic policies. *See generally, Megenity v. Stenger*, 27 F.3d 1120, 1125 (6th Cir. 1994); *Parate*, 868 F.2d at 827. Courts rarely intervene in academic decisions particularly when they involve degree requirements. *See Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998). Moreover, Plaintiff's requested remedy would not provide him relief because his allegations demonstrate complaints and disputes with various non-party faculty through which he seeks judicial intervention. *See R. K. by & through J. K. v. Lee*, 53 F.4th 995, 1001 (6th Cir. 2022) ("Because plaintiffs' injuries are not fairly traceable to any defendant here, no remedy applicable to those defendants (be it an injunction or a declaration) would redress the plaintiffs' alleged injuries."). Accordingly, Plaintiff's alleged harms are not redressable by this Court.

Based on the above, the undersigned concludes Plaintiff lacks standing. Accordingly, the court lacks jurisdiction.

*Ripeness*

Defendants also contend Plaintiff's claims are not ripe for adjudication. Docket No. 27, p. 15. The undersigned agrees. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). Plaintiff does not plausibly allege that defendants caused delay, disability aggravation, career harm, or reputational injury. Docket No. 13, pp. 8-10. Each claimed harm is speculative. Again, any delays stem from Plaintiff's decision to pursue his coursework out of sequence and insist on publication before completing the required coursework. The issues he raises fall within the ordinary academic authority of the university and CJA faculty. Plaintiff has failed to plausibly allege any actual infringement of his constitutional or

disability rights.

## A. Eleventh Amendment Sovereign Immunity

Defendants also argue Eleventh Amendment immunity bars Plaintiff's claims. Docket Nos. 27, pp. 8-9; 29, pp. 1-4. Plaintiff counters, asserting the *Ex parte Young* allows for his claims for prospective injunctive relief against Butler and McPhee. Docket No. 28. Plaintiff seeks an order requiring defendants to: (1) implement his documented disability accommodations as required by the ADA and Section 504; (2) cease their censorship and approve his committee-defended thesis for publication as protected by the First Amendment; and (3) correct his official academic record to accurately reflect the completion of his thesis defense, as required by due process. Id. at p. 10. He contends his requested relief is forward-looking and does not seek to remedy a past wrong with monetary compensation but to halt defendants' present and continuing unlawful conduct. He argues that defendants' refusal to provide testing accommodation for his Fall 2025 exam is an ongoing violation and that continued refusal to publish his thesis is an ongoing act of censorship in violation of the First Amendment. Id. He contends his claims against Butler and McPhee, who oversee and implement the university's academic and graduate policies, fall within *Ex parte Young* exception because they have the authority to end these ongoing violations of federal law. Id. The unsigned disagrees and concludes that even if Plaintiff had standing, his claims are barred by sovereign immunity.

Before considering a suit against a state, a federal court must determine whether the Eleventh Amendment bars jurisdiction. That constitutional provision reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Eleventh Amendment grants sovereign

13

immunity to the states in most cases, which prevents federal courts from having jurisdiction in lawsuits brought by private plaintiffs where the state is a defendant. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532, 211 L. Ed. 2d 316 (2021) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)). Such immunity also extends to departments and agencies that are arms of the state, as well as state officers acting in their official capacity. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (Eleventh Amendment bars suits against departments that are arms of the states); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (construing suits against a state official in his or her official capacity as a suit against the official's office). This immunity bars suits "for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). Dismissal on Eleventh Amendment grounds is not a judgment on the merits, but rather a dismissal for lack of jurisdiction. *Republic of Paraguay v. Allen*, 134 F.3d 622, 626 (4th Cir.*), cert. denied*, 523 U.S. 371 (1998).

While Plaintiff does not explicitly assert § 1983 claims, he seeks monetary damages in connection with his First Amendment claims, along with attorney fees and costs. Docket No. 13, pp. 1-2, 10. Monetary claims under the ADA are barred by the Eleventh Amendment. *Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004). And the state has not consented to allow students to sue for monetary damages. *Boyd v. Tennessee State Univ.*, 848 F. Supp. 111, 114 (M.D. Tenn. 1994). Because Plaintiff has sued defendants in their official capacities, Eleventh Amendment immunity bars his claims for damages to the extent he brings them under § 1983.

In limited circumstances, a private party may bring suit even without a valid abrogation or waiver of immunity. Under the doctrine of *Ex parte Young*, a state official sued in their official capacity may be enjoined from taking action that violates federal law. *See Diaz v. Michigan Dept. of Corrections*, 703 F.3d 956, 964 (2013). In *Ex parte Young*, 209 U.S. 123, 155-56 (1908), the

14

Supreme Court held that when a state official acts in violation of the Constitution or federal law, he is acting *ultra vires* and is no longer entitled to the State's immunity from suit. In effect, *Ex parte Young* creates a legal fiction: a state official stops being a state official when he does something contrary to federal law. The *Ex parte Young* doctrine permits only prospective injunctive relief; no money damages are available. *Trivette v. Tennessee Dept. of Corrections,* 739 F. Supp. 3d 663, 691 (M.D. Tenn. 2024).

Plaintiff asserts the *Ex parte Young* exception allows the suit to proceed against Butler and McPhee. Docket No. 28, p. 10. Defendants contend the exception fails because Plaintiff has failed to allege or identify an ongoing violation of federal law by either Butler or McPhee. Docket No. 29, p. 1. They argue moreover, each of the alleged harms and requested forms of relief arises from the University's academic purview and judgment. Id. at p. 2.

*Ex parte Young* is available only when the state official being sued has taken or is about to take--an action. *See Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1414–1416 (6th Cir. 1996) ("Young abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's action."). But "*Young* 'does not insulate from Eleventh Amendment challenge every suit in which a state official is the named defendant ... *Young* applies only where the underlying authorization upon which the named official acts is asserted to be illegal.' " Id. at 1417. In that regard, the state official sued in an *Ex parte Young* action must bear a "sufficient connection" to the challenged act, and it is not enough to simply claim that by virtue of their office they have the general authority to take the allegedly illegal action. See id. at 1416 (noting that "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law").

Plaintiff seeks injunctive relief to have Butler approve and publish his thesis. Butler is the

15

only official who is alleged to have violated Plaintiff's First Amendment rights.  However, Plaintiff has failed to plead he possesses a constitutional right to have any work published. As to McPhee, Plaintiff asserts no allegations that McPhee took any action with respect to Plaintiff or his thesis. The Eleventh Amendment bars any request for injunctive relief against him because there is no allegation of an ongoing violation of federal law.

In evaluating whether an accommodation exceeds the bounds of reasonableness and begins to fundamentally alter a school's educational offerings, the "federal judiciary is ill equipped to evaluate the proper emphasis and content of a school's curriculum" and should afford a university's judgment and discretion great respect. *Kaltenberger*, 162 F.3d at 436;  *Doherty v. Southern College of Optometry*, 862 F.2d 570, 576 (6th Cir. 1988) (same; Rehabilitation Act case) (citation omitted). Though discrimination statutes guarantee disabled students "equality of opportunity" and "full participation" in society, 42 U.S.C. § 12101(a)(7), they do not require an educational institution to lower or substantially modify its standards to do so, *Southeastern Community Coll. v. Davis*, 442 U.S. 397, 413 (1979). They mandate only reasonable—not fundamental or substantial—adjustments. *Alexander v. Choate*, 469 U.S. 287, 300 (1985). In assessing the importance of academic requirements in health care programs especially, where "the conferral of a degree places the school's imprimatur upon the student as qualified to" practice, the judiciary ought only reluctantly intervene. Id. at 437 (quotation omitted).  Courts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement. *See McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 859 (5th Cir. 1993); *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992).

Plaintiff asks the court to "implement" his disability accommodations. Docket No. 28, p. 10. However, in the amended complaint he does not identify what actions of either Butler or

16

McPhee have deprived him of his approved accommodation. Plaintiff's professors have already implemented his approved accommodations, and they are not parties to the suit. Plaintiff's complaint of discrimination appears to consist of his disagreement with how his professors apply the accommodations to his work in an academic setting. Docket No. 13. *See Southeastern Community Coll. v. Davis*, 442 U.S. 397, 413 (1979) (institutions are not required to lower or fundamentally alter academic standards to accommodate disabilities; they are only required to provide reasonable adjustments); *Cf. Gati v. W. Kentucky Univ*., 762 F. App'x 246, 250 (6th Cir. 2019) (granting summary judgment to defendant University because disabled student's proposed accommodations to take classes remotely and conduct counseling sessions at separate location were not reasonable); *Kaltenberger v. Ohio Coll. of Podiatric Med*., 162 F.3d 432, 436-37 (1998) (universities retain discretion in how accommodations are implemented.). Defendants therefore acted within their professional academic judgment.

Plaintiff also asks the court to order defendants to approve his thesis for publication. Docket No. 28, p. 10. There is no constitutional right to have a student thesis published and universities retain broad discretion over school-sponsored expressive activities so long as their decisions are reasonably related to legitimate pedagogical objectives. *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271-73 (1988) and progeny; *Ward v. Polite*, 667 F.3d 727, 733 (6th Cir. 2012); *Brown v. Li*, 308 F.3d 939, 952 (9th Cir. 2002) (doctoral student's First Amendment rights were not violated upon committee's declination to approve "disacknowledgement" portion of thesis). Whether Plaintiff's thesis is endorsed for publication is an academic judgment based on the presumption that he successfully completed all degree requirements. Requiring him to complete degree requirements before publication is a reasonable pedagogical purpose and within accepted academic norms.

Lastly, Plaintiff asks that his transcript reflect completion of his thesis defense. Docket No. 28, p. 10. Universities have broad discretion regarding students' academic performance, and courts may intervene only where there is a substantial departure from accepted academic norms. *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n.6 (1978); *Al-Dabagh v. Case W. Rsrv. Univ.*, 777 F.3d 355, 357 (6th Cir. 2015). The acts of University officials fall within their discretionary academic authority, and *Ex parte Young* does not apply.

### III.  CONCLUSION

Consistent with the above, the undersigned recommends defendants' motion to dismiss the amended complaint (Docket No. 26) be **GRANTED.**  All remaining pending motions: (1) Plaintiff's motion for a preliminary injunction (Docket No. 6); (2) defendants' motion to strike (Docket No. 23); and (3) Plaintiff's motion to file a sur-reply (Docket 30) should be **DENIED AS MOOT.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

18