# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| JOSEPH SALLAJ,           ) | |
|            ) | |
|     Plaintiff,       ) | |
|            ) | |
| v.                 ) | |
|            )    **Case No. 3:25-cv-00607** | |
| MIDDLE TENNESSEE STATE   )   **Judge Aleta A. Trauger** | |
| UNIVERSITY, DAVID BUTLER in his  ) | |
| official capacity, and PRESIDENT   ) | |
| SIDNEY McPHEE in his official     ) | |
| capacity,               ) | |
|            ) | |
|     Defendants.     ) | |

## <u>MEMORANDUM & ORDER</u>

Before the court are plaintiff Joseph Sallaj's Objections (Doc. No. 33) to the Magistrate

Judge's Report and Recommendation ("R&R") (Doc. No. 32), which recommends that the court

grant the Motion to Dismiss (Doc. No. 26) filed by defendants Middle Tennessee State University

("MTSU"), David Butler (sued in his official capacity as the Institutional Review Board ("IRB")

President and MTSU Dean of Graduate Studies), and Sidney McPhee (sued in his official capacity

as MTSU President) (Doc. No. 26).

For the reasons set forth herein, the court will largely reject the analysis set forth in the

R&R but will nonetheless, on *de novo* review, grant the defendants' Motion to Dismiss and dismiss

this case in its entirety—some claims with prejudice and some without.

## I. STANDARD OF REVIEW

### A. Rule 72

Within fourteen days after being served with a report and recommendation as to a

dispositive matter, any "party may serve and file specific written objections to [a magistrate

judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court

must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

### B.      Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction. Unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, federal courts have only the authority to decide cases that the Constitution and Congress have empowered them to resolve. *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted).

Under Rule 12(b)(1), the standard of review depends on whether the defendant brings a factual challenge or a facial challenge to subject matter jurisdiction. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack requires the district court to analyze conflicting evidence to determine if jurisdiction exists, while a facial attack "questions merely the sufficiency of the pleading." *Id.* Thus, "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. If those allegations establish federal claims, jurisdiction exists." *Id.* (internal citation omitted).

Dismissals under Rule 12(b)(1) are typically without prejudice, because the court does not reach the merits of the plaintiff's claims. *See Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018) ("Article III standing is jurisdictional, and a federal court

lacking subject-matter jurisdiction is powerless to render a judgment on the merits. Consistent with this, our court has stated on several occasions that dismissal for lack of subject matter jurisdiction should normally be without prejudice." (internal citation omitted)); *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) ("[D]ismissals for lack of jurisdiction should generally be made without prejudice.").

### C.      Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (2007). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). A court may also consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted).

## II.      BACKGROUND

Plaintiff Sallaj initiated this lawsuit in June 2025 and filed his First Amended Complaint ("FAC") (Doc. No. 13) in October 2025. Generally, he alleges that he enrolled in MTSU's online Criminal Justice Administration ("CJA") master's program in the Spring of 2024 and registered with Disability Services ("DAC"). (FAC ¶ 8.) He claims that he has documented disabilities, including traumatic brain injury, seizures, mild cognitive impairments, developmental delays, dyslexia, mild speech impairment, visual and auditory impairments, PTSD, and ADHD, among others. (*Id.* ¶ 9.) MTSU granted him reasonable accommodations for these disabilities. (*Id.*)

The plaintiff alleges that he nonetheless experienced a "pattern of discriminatory behavior" during the spring of 2024, when he received a bad grade and critical comments from MTSU professor Dr. Carter Smith, and "similar behavior" from other department members. (*Id.* ¶ 10.)

The plaintiff apparently filed a complaint about Dr. Smith (*see id.*), during the investigation into which another faculty member, Dr. Harms, made inappropriate and derogatory comments about the plaintiff and his request for accommodations. (*Id.* ¶ 11.) Dr. Harms subsequently removed from the summer 2024 catalog a course that had regularly been offered for the previous

six years. The plaintiff claims that this decision by Dr. Harms was in retaliation for the plaintiff's complaint about Dr. Smith. (*Id.* ¶ 12.)

Dr. Harms taught a replacement course but did not adequately accommodate the plaintiff's disabilities, insofar as he failed to provide clear instructions and was excessively critical about the plaintiff's grammar and spelling. (*Id.* ¶ 13.) He also falsely accused the plaintiff of plagiarism, for which the plaintiff received an "unwarranted warning." (*Id.*) The plaintiff filed a complaint about that too. (*Id.*)

The plaintiff was approved to begin work on his master's thesis in the summer and fall of 2024. (*Id.* ¶ 16.) His first proposed thesis topic was rejected after excessive delays, despite his appeals. (*Id.* ¶¶ 25–27.) No investigation into his complaints was conducted, and the Dean of CJA instead found that there was no "university-recognized legal 'right' to conduct research'" and dismissed his First Amendment claim based on the rejection of his first proposed thesis topic. (*Id.* ¶ 28.)

The plaintiff's second proposed thesis topic was apparently approved. (*See id.* ¶ 29.) He completed this thesis "[u]nder duress" in the spring of 2025 but, despite its being "approved and defended for publication by committee members," defendant David Butler, as Dean of Graduate Studies, withheld approval for publication of the thesis, stating that publishing it before the plaintiff had completed his master's course work would be "improper, irregular, and irresponsible." (*Id.* ¶ 19.) The plaintiff claims that MTSU's continuing refusal to publish his thesis constitutes censorship and violates "fundamental principles of academic freedom, transparency, and the right to access important research findings." (*Id.* ¶¶ 19, 32.)

He submitted a complaint about this too. When Dr. Butler was interviewed about the issue as part of the investigation, Dr. Butler again cited "standard practices." (*Id.* ¶ 20.) The plaintiff

asserts that there are no such "standard practices" found in "MTSU policies, regulations, or law" that would "justify withholding publication." The plaintiff filed another complaint with MTSU provost Brian Hinote, but Hinote rejected the appeal, finding that Dr. Butler was the "final arbiter" of matters concerning graduate degrees and that the plaintiff could not appeal. (*Id.* ¶¶ 21–22.) The plaintiff states that he has filed "over ten formal complaints and several grade appeals" over the course of his year in the CJA program. (*Id.* ¶ 23.)

Based on these factual allegations, the plaintiff brings the following claims:

(1) a claim against MTSU only (*see* FAC at 8) for violating Title II of the Americans with Disabilities Act ("Title II") and Section 504 of the Rehabilitation Act ("Section 504"), based on allegations that the plaintiff was denied documented accommodations to which he was entitled, as a result of which he has suffered "emotional distress, academic setbacks, and financial losses" and that he suffered retaliation after he complained about discrimination (FAC ¶¶ 12, 47);

(2) a claim against MTSU and defendant Butler in his official capacity for violating the plaintiff's rights under the First Amendment to the United States Constitution (presumably under 42 U.S.C. § 1983) and under Article 1, Section 19 of the Tennessee Constitution, by "withholding thesis approval" and thus "arbitrar[ily] interfer[ing] with [the plaintiff's] ability to conduct research, complete and publish his academic work without censorship and academic retaliation," causing the plaintiff "irreparable damage to his academic reputation and future professional opportunities" (*id.* ¶¶ 48–49, 51);

(3) a claim against MTSU and Butler, again presumably under 42 U.S.C. § 1983, for violating the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment by

adopting unclear and overly broad unwritten policies, relying on non-existent regulations and practices, and failing to follow MTSU policies, rules and regulations (*id.* ¶¶ 52–53);[1] and

(4) a fraudulent misrepresentation claim against MTSU and Butler, based on the plaintiff's allegations that Butler falsely told him that the plaintiff's thesis proposal in the summer of 2024 required a "full review" due to his proposal to work with a "vulnerable" population (*id.* ¶¶ 54–63).

To remedy these claims, as discussed below, the plaintiff seeks a combination of injunctive and declaratory relief, as well as money damages. (*See id.* at 10.)

The defendants filed their Motion to Dismiss and supporting Memorandum (Doc. No. 27), arguing that (1) Eleventh Amendment sovereign immunity bars the plaintiffs' claims; (2) the plaintiff lacks standing to bring his claims; (3) he fails to plausibly allege facts sufficient to state colorable claims for disability discrimination, violation of any constitutional rights, or fraudulent misrepresentation.

The R&R recommends that the Motion to Dismiss be granted on the basis that the plaintiff lacks standing to bring his claims and that the Eleventh Amendment bars his claims. (Doc. No. 32.) The plaintiff filed timely Objections in which he contends that: (1) the R&R "incorrectly appl[ies] the Eleventh Amendment to bar claims for prospective injunctive relief against state officials for ongoing violations of federal law," under *Ex parte Young*; (2) mischaracterizes university officials' "blatant refusals to implement university-approved disability accommodations as protected 'academic judgments'"; (3) applies the wrong First Amendment standard to MTSU's "viewpoint-based censorship of graduate-level research"; and (4) "ignore[s] well pleaded

---

[1] The plaintiff also references the Equal Protection Clause of the U.S. Constitution in the body of his pleading, asserting that the defendants' denial of his right to publish his master's thesis violated his right to equal protection by "treating him in an arbitrary and discriminatory fashion contrary to established legal principles of fairness." (SAC ¶ 24.)

allegations that satisfy the 'stigma-plus' test for a due process violation." (Doc. No. 33 at 1–2.) The defendants filed a Response, defending the R&R's conclusion and opposing the Objections. (Doc. No. 37.) The plaintiff filed a Reply. (Doc. No. 39.)

## III.    DISCUSSION

### A.      Sovereign Immunity Under the Eleventh Amendment and/or Common Law

Under the Eleventh Amendment, a State—which includes state agencies and state officials sued in their official capacity—cannot be sued in federal court unless (1) the State has consented to such a suit, (2) its immunity has been properly abrogated by Congress, or (3) the *Ex parte Young* exception applies. *WCI, Inc. v. Ohio Dep' of Pub. Safety*, 18 F.4th 509, 513–15 (6th Cir. 2021;[2] *see also Latham v. Office of Atty. Gen.*, 395 F.3d 261, 270 (6th Cir. 2005); *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law. *S&M Brands*, 527 F.3d at 507–08; *Ex parte Young*, 209 U.S. 123 (1908). Here, there is no question that MTSU, as a public university, is an arm of the state. *McCormick v. Miami Univ.*,

---

[2] The Sixth Circuit explained in *WCI, Inc.* that the concepts of sovereign immunity and Eleventh Amendment immunity, though frequently conflated by the courts, are distinct concepts, insofar as the Eleventh Amendment, on its face, "includes a diversity requirement and sounds in subject-matter jurisdiction" in federal court and is generally not waivable, 18 F.4th at 513–14, while common-law sovereign immunity predates the Constitution, "erects a jurisdictional bar in both state and federal courts and does not require diversity among the litigants," and, because it sounds in personal jurisdiction, "may be waived by a state's conduct." *Id.* at 514. But the Supreme Court and the Sixth Circuit have also said that the Eleventh Amendment bars suits against a state by its own citizens, irrespective of diversity. *See Stanley v. W. Mich. Univ.*, 105 F.4th 856, 863 (6th Cir. 2024) ("Although the text does not explicitly say so, Eleventh Amendment immunity precludes suits brought against a State by its own citizens." (citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)).

The plaintiff has provided a variety of return addresses on his mailings to the court, but he does not allege his citizenship in his pleadings. The court, therefore, does not know whether he is a Tennessee citizen. As the defendants point out, the plaintiff's most commonly used address is located in a strip mall on Charlotte Avenue, which houses, among other things, an S&S Pack-N-Ship Center.

693 F.3d 654, 661–62 (6th Cir. 2012). MTSU employees David Butler and Sidney McPhee, who are sued in their official capacity only, are state officials.

The defendants argue broadly that the Eleventh Amendment bars the plaintiff's claims for damages; they are only partially correct.

### 1. Title II and § 504 Claim

The defendants (and the R&R) fail to acknowledge that Congress abrogated immunity for claims under § 504 of the Rehabilitation Act for state agencies that accept federal funding—as public universities like MTSU do. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 443 (6th Cir. 2020); *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002); *see also* 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . ."). It therefore appears that the Section 504 claim is not barred by the Eleventh Amendment.

The defendants also do not grapple specifically with the question of whether Congress validly abrogated states' immunity from claims under Title II of the ADA—as distinct from Title I—in the context of claims against a state university relating to alleged disability discrimination in the post-graduate context. "Congress has expressed an unequivocal desire to abrogate Eleventh Amendment immunity for violations of the ADA." *Babcock v. Michigan*, 812 F.3d 531, 534 (6th Cir. 2016). When determining whether 11th Amendment immunity bars claims under Title II of the ADA, courts are instructed to:

> determine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006); *Y.A. by Alzandani v. Hamtramck Pub. Schs.*, 137 F.4th 862, 869 (6th Cir. 2025). The Sixth Circuit does not appear to have applied this test in

the context of higher public education or post-graduate education. Several courts have found that sovereign immunity is abrogated in the higher education context. *See, e.g., Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 556 (3d Cir. 2007); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 490 (4th Cir. 2005).

The defendants cite only an unreported case that predates *Georgia* in support of their assertion that the plaintiff's Title II claim is barred by sovereign immunity, and they do not conduct any part of the *Georgia* analysis. In light of their failure to offer binding or persuasive authority holding that state immunity is *not* abrogated in the context of public education, this court will not conclude, at this juncture, that the Title II claim is barred by sovereign immunity, without some analysis by the parties of the *Georgia* factors.

In sum, the court cannot find at this juncture that the plaintiff's Title II and Section 504 claims against MTSU (the only defendant against whom these claims are brought) are barred by sovereign immunity.

### 2. Claims under 42 U.S.C. § 1983

Tennessee has not waived its immunity to claims under 42 U.S.C. § 1983, *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986); nor has Congress abrogated states' immunity under that statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), *overruled on other grounds by Hafer v. Melo*, 502 U.S. 21, 27 (1991). Accordingly, MTSU is absolutely immune from suit under 42 U.S.C. § 1983, irrespective of the type of relief sought. *Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953, 960 (6th Cir. 1986). The claims against MTSU for violating the plaintiff's rights under the First and Fourteenth Amendments, therefore, will be dismissed without prejudice for lack of subject matter jurisdiction.

The plaintiff's claims against the state officials under the First Amendment may avoid dismissal under the Eleventh Amendment only if they fall within the scope of *Ex parte Young*. Insofar as the plaintiff seeks prospective injunctive relief to remedy the purported violation of his rights—in the form of an injunction requiring "immediate approval of Plaintiff's thesis and the removal of any undue publication restrictions" (FAC at 10), the court finds that the claim may survive Eleventh Amendment scrutiny. *See Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) ("In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law."). However, the plaintiff also seeks "compensatory and punitive damages for violations of the First Amendment of the U.S. Constitution" and a "declaration that Defendants' actions violated . . . Plaintiff's First Amendment rights." (FAC at 10.) More specifically, he claims that defendant Butler violated his rights under the First Amendment when he arbitrarily rejected the plaintiff's first proposed thesis topic in the spring of 2024. The plaintiff's requests for damages and for a declaration that the defendants' *past conduct* violated his rights seek retroactive relief. As such, they are outside the scope of *Ex parte Young* and entirely barred by the Eleventh Amendment. *See S&M Brands*, 527 F.3d at 508 ("The *Ex parte Young* exception does not, however, extend to any retroactive relief." (citation omitted)). Accordingly, the claims against the state officials for retroactive relief to remedy the alleged First Amendment violations will be dismissed without prejudice.

The plaintiff also purports to bring a claim under the Due Process Clause of the Fourteenth Amendment. (FAC at 9.) He does not identify a substantive due process right, and the law is clear that there is no substantive due process right to education, much less to a graduate degree.[3] The

---

[3] *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *accord Stanford v. Northmont City Sch.*

court therefore presumes that he intends to state a claim for violation of his procedural due process rights. This presumption is further substantiated by the plaintiff's assertion about his right as a student to "have a fair hearing, file complaints, attend meetings, receive notice of decisions affecting academics, correct inaccuracies, and address violations of any law." (FAC ¶ 53.)

In support of his due process claim, the plaintiff alleges that defendant Butler "stated erroneous reasons" for refusing to publish the plaintiff's thesis, "including that publishing before completing all required courses would be 'improper, irregular, and irresponsible.'" (FAC ¶ 19.) He alleges that other individuals (who are not named as defendants) were involved in the plaintiff's appeal of that decision but that his numerous "formal complaints" and "grade appeals" were "summarily dismissed or improperly handled." (See id. ¶¶ 20–23.) He asserts that he was entitled to "fair process" before the "inflict[ion] of educational harm" and, more specifically, that he has a right to "have a fair hearing, file complaints, attend meetings, receive notice of decisions affecting academics, correct inaccuracies, and address violations of any law." (Id. ¶¶ 23, 53.) He alleges that the defendants violated this right by creating unclear and overly broad policies, relying on "non-existing regulations and so-called 'standard practices' for decision-making," and that the defendants "failed to follow school policies, regulations, rules, and laws (federal and state)." (Id. ¶ 52.)

It appears that the plaintiff's request for an injunction directing the immediate approval of his master's thesis is made only in connection with his First Amendment claim. He does not seek similar relief relating to his due process claim—in fact, he does not appear to seek an injunction

---

*Dist.*, No. 3:19-cv-399, 2023 WL 1819117, at *5 (S.D. Ohio Feb. 8, 2023) ("[T]here is no federal right to receive a public education."), *aff'd*, No. 23-3203, 2023 WL 6389624 (6th Cir. Oct. 2, 2023); *Gary B. v. Snyder*, 329 F. Supp. 3d 344, 366 (E.D. Mich. 2018) (holding that there is no substantive due process right to a minimally adequate education).

related to the alleged deprivation of his due process rights at all. Instead, he seeks a judicial declaration that the defendants' *past actions* violated his due process rights. (*Id.* at 10.) As stated above, the "*Ex parte Young* exception does not, however, extend to any retroactive relief." *S&M Brands*, 527 F.3d at 508. Moreover, "the *Ex parte Young* exception applies only when a plaintiff seeks and clearly alleges prospective equitable relief to stop a continuing violation of federal law." *Josephson v. Ganzel*, 115 F.4th 771, 782 (6th Cir. 2024) (internal quotation marks and citation omitted). Because the plaintiff does not appear to "seek[] and clearly allege[] prospective equitable relief" in connection with his due process claim or allege an ongoing violation of federal law—as opposed to purely past violations—the due process claim is barred by the Eleventh Amendment and will be dismissed on that basis.[4]

In sum, the plaintiff's claims under 42 U.S.C. § 1983 against MTSU will be dismissed in their entirety. His claims against the individual defendants in their official capacity for damages and declaratory relief relating to completed events that took place in the past are also barred by sovereign immunity, requiring the dismissal of his due process claim in his entirety, and dismissal of his claims for damages and a declaration regarding the illegality of past conduct in connection with his First Amendment claim. His First Amendment claim for prospective injunctive relief is not barred by sovereign immunity.

> 3.    *State Law Claim(s)*

The plaintiff also brings claims under Tennessee law for violation of the plaintiff's rights under Article 1, Section 19 of the Tennessee Constitutional and for fraudulent misrepresentation

---

[4] To the extent the plaintiff intended to state a claim based on violation of the Equal Protection Clause of the Fourteenth Amendment, the same analysis and same conclusion would apply.

against MTSU and Butler. These claims are entirely barred by the Eleventh Amendment. As the Sixth Circuit has stated:

> The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment. . . . The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment.

*McCormick*, 693 F.3d at 664 (quoting *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520–21 (6th Cir. 2007)).[5] This principle is true irrespective of whether the plaintiff seeks money damages or prospective injunctive relief. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) ("[A] suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.").

Accordingly, the state law claims against all defendants will be dismissed without prejudice based on Eleventh Amendment immunity.

## B.    Standing

In support of their contention that the plaintiff's claims should all be dismissed based on a lack of standing, the defendants argue that the plaintiff fails to allege a cognizable injury under the various statutory schemes and constitutional amendments under which his claims arise and that any injury he does allege is not fairly traceable to the defendants and/or are not redressable by the

---

[5] The court also observes that the FAC fails to plead fraud with the particularity required by Rule 9 of the Federal Rules of Civil Procedure. Moreover, under Tennessee law, "to state a claim for fraudulent misrepresentation, the plaintiff must allege, *inter alia*, that [he] reasonably relied on the misrepresentation and suffered damage." *Fletcher v. Campbell*, No. 02A01-9605-CH-00102, 1996 WL 560260, at *1 (Tenn. Ct. App. Oct. 3, 1996) (internal quotation marks and citations omitted). The plaintiff does not plead that he relied to his detriment on any allegedly false statement by the defendants and therefore fails to state a colorable claim for fraudulent misrepresentation, even if the claim were not barred.

court. Alternatively, they argue that the claims are not ripe for adjudication, insofar as the claimed harm is speculative.

Generally, Article III limits the judicial power to resolving actual "Cases" and "Controversies." U.S. Const. art. III, § 2. "To satisfy that jurisdictional requirement, a plaintiff who files a complaint in court must establish its 'standing' to sue." *Tenn. Conf. of Nat'l Ass'n for the Advancement of Colored People v. Lee*, 139 F.4th 557, 562 (6th Cir. 2025) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, the plaintiff must show "an injury attributable to the defendant's conduct and redressable by the requested relief." *Id.* (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024)). In other words, standing has three elements: "injury, causation, and redressability." *WCI, Inc.*, 18 F.4th at 515 (citing *Lujan*, 504 U.S. at 560–61).

At the pleading stage, the plaintiff must clearly allege facts demonstrating each element. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020). Moreover, because "standing is not dispensed in gross," the plaintiff "must demonstrate standing for each claim that [he] press[es] and for each form of relief that [he] seek[s] (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431568 (2021).

### 1. Title II and Section 504 Claims

To establish an injury in fact, the plaintiff must allege an injury that is both "(a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Here, the plaintiff claims that he suffered discrimination because of his disability, but he admits that MTSU accommodated his documented disabilities. (FAC ¶ 9.) He alleges that, despite these accommodations, some of his professors failed to adequately implement them, gave him bad grades on certain assignments, and questioned his entitlement to such accommodations. (*Id.* ¶¶ 10–11, 13, 15.) He also alleges that

one of his professors retaliated against him by removing a course from the course catalog, thus forcing him to take a substitute course, and that the same professor falsely accused him of plagiarism, for which the plaintiff received an "unwarranted warning." (*Id.* ¶ 14.) The plaintiff does not allege that he has failed any classes or been removed from the program because of disability discrimination or retaliation.

The defendants assert that "receiving a poor grade on a midterm paper, being required to enroll in different courses within the CJA program, receiving critiques on writing assignments, and being warned about plagiarism . . . are not cognizable injuries that occurred because of [the plaintiff's] disability." (Doc. No. 27 at 10.) They further argue that these types of actions are "routine academic judgments squarely within the discretion of faculty and administrators." (*Id.*)

In other words, the defendants, while arguing standing, actually appear to contest the plaintiff's Title II and Section 504 claims on the merits. In addressing standing, "a federal court must assume *arguendo* the merits of [the plaintiff's] legal claim." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (citation omitted); *see also Parker v. D.C.*, 478 F.3d 370, 377 (D.C. Cir. 2007) ("The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." (citing *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975), *aff'd sub nom. D.C. v. Heller*, 554 U.S. 570 (2008). The standing question, therefore, presumes that the plaintiff has stated a colorable disability discrimination claim.

The court is not persuaded that the plaintiff lacks standing to bring these claims. For purposes of standing, the court must presume that the plaintiff adequately alleges that he was subjected to discrimination on the basis of disability (and retaliation for engaging in protected

conduct). Such discrimination is presumed to give rise to an injury, which may be redressed by monetary damages and/or injunctive relief awarded against MTSU.

### 2. Section 1983 Claims

As set forth above, the plaintiff's Section 1983 claims against MTSU will be dismissed based on sovereign immunity; his due process claim will be dismissed because he does not seek relief that falls within the scope of *Ex parte Young* in connection with that claim. This leaves only his First Amendment claim against David Butler, as IRB President and MTSU Dean of Graduate Studies, and Sidney McPhee, as MTSU President. The defendants assert that the plaintiff lacks standing to bring this claim.

As the Sixth Circuit has explained, as part of the plaintiff's obligation to establish standing, the plaintiff must "allege how the requested relief against *each* of the defendants could redress plaintiff['s] alleged injuries-in-fact." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022). Regarding President McPhee, the plaintiff alleges only that McPhee, as President of MTSU, "oversees, approves, and reviews all operations within MTSU" and that his office "is responsible for investigating all employee misconducts." (FAC ¶ 7.) The plaintiff does not allege "specific, plausible allegations about what the [MTSU President] has done, is doing, or might do to injure [him]." *Id.* (citations omitted). Without this type of allegation, the plaintiff has "shown no basis on which [he] can seek an injunction—an *in personam* decree coercing the [President] to act or refrain from acting—or a declaratory judgment, the 'real value' of which is to influence the future 'behavior of the defendant towards the plaintiff.'" *Id.* at 1032 (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)). In other words, assuming the plaintiff has been injured, he has "not explained how the [President] caused the injury," and he has "failed to show what a federal court could order the [President] to do or refrain from doing to give [him] relief—a redressability defect." *Id.* Accordingly, the plaintiff has not established the existence of

an Article III case or controversy against President McPhee, and his First Amendment claim against McPhee is subject to dismissal for lack of standing.

The plaintiff also brings a First Amendment claim against David Butler. In support of this claim, he alleges that his First Amendment rights were violated by the defendants' "arbitrary interference with his ability to conduct research, complete and publish his academic work without censorship and academic retaliation." (FAC ¶ 48.) This claim is based on Butler's refusal to publish the plaintiff's completed thesis. (*Id.* ¶¶ 19, 25, 27, 32.) The plaintiff claims that, by restricting access to "relevant, peer-reviewed studies, the Defendants prevent legislators, health professionals, and public-health experts from using evidence-based research to formulate effective policies, thereby violating . . . federal . . . constitutional rights related to freedom of speech and the free flow of information." (*Id.* ¶ 33.) He also alleges that he suffered "irreparable damage to his academic reputation and future professional opportunities" (*id.* ¶ 51), and he seeks a remedy in the form of an injunction requiring "the immediate approval of Plaintiff's thesis and the removal of any undue publication restrictions" (*id.* at 10).

Insofar as the plaintiff asserts that Butler's refusal to publish his thesis caused harm to "legislators, health professionals, and public-health experts," the plaintiff clearly lacks standing to assert claims based on injuries to non-parties. He may only bring claims to address his own injuries. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972) ("Appellee has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others.").

Otherwise, however, the court is not fully persuaded by the plaintiff's standing argument. As set forth above, in addressing standing, the court must presume that the plaintiff has stated a valid First Amendment claim. Further, he has alleged an injury in fact: the defendants' refusal to publish his master's thesis in violation of his First Amendment rights. He has alleged that this

decision was directly caused by Butler, who made the decision. And he seeks an injunction compelling Butler to immediately approve the thesis and remove any barriers to its publication. There are, indeed, other problems with this claim (discussed below), but standing does not appear to be among them.

### C. Failure to State a Claim for Which Relief May Be Granted

#### 1. Title II and Section 504 Claims

Generally, to establish a *prima facie* case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he is "otherwise qualified"; and (3) he was "being excluded from participation in, denied the benefits of, or subjected to discrimination under [a public program] because of his disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (footnote and citations omitted). "In other words, the plaintiff must show that the defendant took action because of the plaintiff's disability . . . ." *Id.* "Further, the plaintiff must show that the discrimination was intentionally directed toward him or her in particular.'" *Id.* (quoting *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008), *abrogated on other grounds as recognized by Anderson*, 798 F.3d at 357 n.1).

Here, the plaintiff's claim founders on the requirement that he show that he was "subject to discrimination . . . because of his disability." This is because the things that he complains about—receiving a poor grade on a midterm paper, being required to enroll in different courses within the CJA program, receiving critiques on writing assignments, and being warned about plagiarism—are not cognizable injuries that plausibly occurred because of the plaintiff's disability. (*See* Doc. No. 27 at 10.) As the Sixth Circuit has recognized, "discrimination laws do not require 'an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person.'" *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 436 (6th Cir. 1998) (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979). And a court

"reviewing the substance of academic decisions . . . 'should show great respect for the faculty's professional judgment.'" *Id.* (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). "Courts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement." *Id.* (citations omitted). The plaintiff admits that he received reasonable accommodations from MTSU, and the minor academic decisions he complains about are not reviewable under Title II or Section 504.

Even with respect to his retaliation claim, the plaintiff's only alleged injuries are (1) being required to take an alternative class and (2) "retaliatory grading." (SAC ¶¶ 12, 46.) Regarding the first, not being able to take a preferred class when he wanted to take it is not a cognizable injury, particularly where the plaintiff plainly alleges that an alternative course was available (and he took it). Moreover, the plaintiff's assertion that the professor's decision to remove a course from the course catalog was in retaliation for the plaintiff's lodging a discrimination complaint is utterly implausible and not supported by any facts that would suggest a causal connection to the plaintiff's protected activity. Notably, this action would have affected equally all of the students in the plaintiff's program who wanted to take the same class, not just the plaintiff. The plaintiff's assertion of retaliatory grading is likewise both conclusory and unsupported by any actual facts suggesting that the plaintiffs' professors did not exercise professional judgment or that the plaintiff was treated differently from non-disabled students with respect to grading standards.

In short, the Title II and Section 504 claims must be dismissed for failure to state a colorable claim for which relief may granted, under Rule 12(b)(6).

### 2. First Amendment Claim

Generally, to prevail on a § 1983 claim, the plaintiff must show that the defendant deprived him of "'rights, privileges, or immunities secured by the Constitution' under color of state law." *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007) (quoting 42 U.S.C. § 1983).

Here, because the plaintiff is asserting his First Amendment claim against Butler in his official capacity, the plaintiff must allege an ongoing violation of a right secured by the First Amendment. And to do so, the plaintiff must, as an initial matter, plausibly plead that he wishes to engage in activity protected by the Free Speech Clause of the First Amendment.

The plaintiff does not allege that Butler (or MTSU) had a problem with the content of his master's thesis. Rather, Butler objected to publishing it before the plaintiff completed all of the academic requirements for his degree. (*See* FAC ¶ 19.) But "[t]he right to freedom of speech does not open every avenue to one who desires to use a particular outlet for expression. . . . Nor does freedom of speech comprehend the right to speak on any subject at any time." *Avins v. Rutgers, State Univ. of N. J.*, 385 F.2d 151, 153 (3d Cir. 1967). "Thus, one who claims that his constitutional right to freedom of speech has been abridged must show that he has a right to use the particular medium through which he seeks to speak." *Id.* Here, the plaintiff has not established the existence of a First Amendment *right* to have MTSU publish his thesis.

Insofar as the plaintiff is claiming a violation of a general First Amendment right to "academic freedom," the claim is similarly problematic. While such a right undoubtedly exists, *see, e.g. Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (recognizing a general right to academic freedom as a "First Amendment protection that has long been recognized in the academic arena"), its contours have never been clearly defined. *Accord Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 215 (D. Conn. 2005) (collecting cases). Insofar as it has been defined, it is often "formulated as a right of a university or other academic institution to be free from government interference with its curriculum and its decisions on who may or may not teach or be admitted to study." *Id.* at 216 (same). In other words, its is generally conceived as a "right [that] inheres in the University, not in individual professors." *Urofsky v. Gilmore*, 216 F.3d 401, 410 (4th

Cir. 2000). Nor does it appear to inhere in individual students who want a public university to publish their papers.

While the plaintiff has the freedom to self-publish, or to submit his paper to any publication he wishes, he cannot compel the publication of his thesis. He simply does not have a right under the First Amendment to compel such publication—by MTSU or any other publisher. *Accord Avins*, 385 F.2d at 153 ("[N]o one doubts that [the plaintiff] may freely at his own expense print his article and distribute it to all who wish to read it. However, he does not have the right, constitutional or otherwise, to commandeer the press and columns of the Rutgers Law Review for the publication of his article . . . .").

To the contrary, courts have found that *universities* have a First Amendment right not to approve a student's thesis, particularly where the decision is supported by a "legitimate pedagogical objective." *Brown v. Li*, 308 F.3d 939, 952 (9th Cir. 2002); *see also Parate v. Isibor*, 868 F.2d 821, 828–30 (6th Cir. 1989) (holding that a university professor has a First Amendment right to assign grades and evaluate students as determined by his or her independent professional judgment). In this case, the plaintiff concedes that the reason given for the refusal to publish his thesis was that he had not yet finished his course requirements and, moreover, that final approval was not actually denied but, instead, "withheld" pending his completion of those requirements. (FAC ¶ 19.)

Given the absence of any indication that the refusal to publish was based on censorship or viewpoint discrimination, the plaintiff simply cannot establish that his First Amendment freedom of speech rights were violated by MTSU's (continuing) refusal to publish his thesis. Consequently, his First Amendment claim against Butler in his official capacity will be dismissed for failure to state a claim for which relief may be granted.

**IV.     CONCLUSION**

For the reasons set forth herein, the defendants' Motion to Dismiss will be granted, albeit not precisely for the reasons recommended by the R&R, and the plaintiff's Objections to the R&R will be overruled. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge